FILED

2009 Aug-12  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | |
|---|---|
| Richard M. Powell, Larry A )<br>Clements, and Belinda )<br>Stephens, Representative )<br>Plaintiffs, and other pers( )<br>similarly situated, )<br> The Plaintiff Class, )<br> )<br> Plaintiffs )<br> )<br> v. )<br> )<br>Charles Gorham and the law )<br>firm of  Gorham & Cason, )<br>L.L.C., and their individua )<br>partners and/or members; L )<br>Stephen Wright, the law fi )<br>of Najjar, Denaburg, P.C. ( )<br>its individual partners, )<br>and/or shareholders; George )<br>Fernambucq, Richard Vincent )<br>the Law firm of Boyd, )<br>Fernambucq & Vincent, P.C., | Civil Action File:<br><br>_____ |

and its individual partners
and/or shareholders; John (
Calhoun, R.A. Ferguson,
Unknown Attorneys and thei
partners, shareholders, and
members(1-20), and Unknown
Club Member Coconspirators,
Aiders and Abettors (21-25)
Other Unknown Coconspirato
Aiders and Abettors (25-60)


Defendants

## COMPLAINT

Aforesaid Plaintiff class, by counsel, complains against aforesaid Defendants as follows:

## JURISDICTION

1. Federal question jurisdiction under 28 U.S.C. §1331 is founded under the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. §§1961 et seq., invoking 18 U.S.C. §2 (aiders, abettors, etc. are Principals);

   (a) the provisions of section 1951 (*Hobbs Act*-interference with commerce through

extortion under color of right, infra p. 30);

(b)   section   1952   (*Travel   Act*-interstate travel, p. 34);

(c)   section 1956 (*money laundering*, p. 38); section 1957 (*monetary transactions*, p. 38);

(d)   section 1341 (*mail fraud*, p. 42); section 1343 (*wire fraud*, p. 42); and

2. Jurisdiction over the pendent state claims for fraud, suppression and deceit under §§6-5-101, 102, and 104, Code of Alabama, 1975, (infra, ¶ 93) is founded under 28 U.S.C. § 1367(a).

3. Venue is founded under the provisions of 28 U.S.C. § 1391(b).

4. Plaintiffs assert a private right of action against Defendants under the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964(a), (b), (c), and (d) (infra, ¶ 107 *et seq.*).

5. All parties defendant are subject to the personal jurisdiction of this court under Fed R Civ P Rule 4(e) under the nationwide service of process provisions of RICO, 18 U.S.C. § 1965. The Northern District of Alabama is the most convenient venue. The conduct injuring Plaintiffs and continuing to injure others occurred in Jefferson County. The individual

defendants reside in Jefferson County, Alabama or resided there during the relevant time and during commission of predicate acts described hereafter. It is in the interest of justice that the individual Defendants be made parties to this action in this venue under 18 U.S.C. § 1965(b).

## INJURY DISCOVERY[1] STATUTE OF LIMITATIONS

6. Through a continuing course of misrepresentations and omissions regarding defendant judges' disqualification and loss of all attorney defendants' honest services, including the misrepresentations and omissions described in this pleading, all defendants as a goal of the Enterprise actively concealed from the Plaintiff class the existence of their causes of action. Given the fiduciary duties[2] owed by defendant judges and lawyers, the Plaintiff class could not have discovered their causes of action against defendants. Representative Plaintiffs and class members were kept in ignorance of information

---

[1] Under RICO, the Supreme Court has held actions accrue upon actual or reasonable "injury discovery."*Rotella v. Wood*, 528 U.S. 549,555-556 (2000) ("Federal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here".) (citations omitted).

[2]*Maiz v. Virani*, 253 F.3d 641, 675 (11th Cir. 2001) ("…This court and others ***have long recognized that where such a [fiduciary] relationship exists, any obligation of due diligence may be excused***, because the plaintiff is *entitled to assume* that the fiduciary is protecting his interests.")

essential to the pursuit of these claims, without any fault or lack of diligence on their part.[3] Representative Plaintiffs and class members did not discover the facts constituting defendants' unconscionable practices until a date within the limitations period governing this action, and promptly exercised due diligence by filing this original Complaint. As the result of defendants' breach of fiduciary duties, misrepresentations and omissions, Representative Plaintiffs and class members had no actual or presumptive knowledge of the facts of defendants' misconduct and resulting injury to even put them on inquiry notice.[4]

7. Representative Plaintiffs and class members could

_____

[3] Eleventh Circuit injury discovery precedent is adopted from Seventh Circuit precedent of Judge Posner. See Eleventh Circuit, *Tello v. Dean Witter Reynolds, Inc.* 410 F.3d 1275, 1283 (11th Cir. 2005); see adopted Seventh Circuit precedent of *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 115 F.3d 1332 (7th Cir. 1997); *Law v. Medco Research, Inc.,* 113 F.3d 781 (7th Cir. 1997); *Marks v. CDW Computer Centers, Inc.,* 122 F.3d 363 (7th Cir. 1997).

[4] *Tello I*, 410 F.3d at 1283 (citations omitted). *See generally* Tello v. Dean Witter Reynolds, Inc. *(Tello II),* 494 F.3d at 956, 968 (11th Cir. 2007) ("*Inquiry notice* in our circuit occurs when there is factual evidence of the *possibility* of securities fraud that would *cause a reasonable person to investigate* whether his or her legal rights had been infringed.")(emphasis added).
*Tello II*, 494 F.3d at 968 (citations omitted) (emphasis added); *see also Tello I*, 410 F.3d at 1283 ("In turn, *inquiry notice triggers reasonable diligence* in investigating the fraud for which notice has been received *in order **to obtain sufficient information to file suit**.*")(citation omitted) (emphasis added).

not, following any "Period of Reasonable Diligence"[5] have discovered defendants' misrepresentations, material omissions and/or unconscionable breach of fiduciary duties and duties of honest services before the filing of this consolidated action and, therefore, their claims accrued on the dates these consolidated actions were filed. RICO's four year statute of limitations under Eleventh Circuit precedent of *Tello I* and *Tello II* does not begin to run until prospective plaintiffs "obtain sufficient information to file suit" or "ascertain sufficient facts to file a complaint."[6]

<u>REPRESENTATIVE PLAINTIFFS AND THE DEFENDANTS</u>

8. Each of the Representative Plaintiffs brings this action on their own behalf and on behalf of all persons within the class definition set forth below (pp. 69 - 75).

---

[5] The Eleventh Circuit properly designated the *two* distinct time points in *Tello I and II* by citing both Seventh and Eleventh Circuit precedent:

<u>Time Point #1</u>: "Inquiry notice is "the term used for knowledge of facts that would lead a *reasonable person* to *begin investigating* the *possibility* that his legal rights had been infringed."

<u>Time Point #2</u>:"*Once inquiry notice occurs*, a prospective plaintiff *enters a **period of reasonable diligence***, which is the time necessary, exercising ordinary investigation, **to ascertain *sufficient facts to file a complaint***.

[6] Id.

9. Representative Plaintiffs Clements and Powell are individuals who are residents of Jefferson County, Alabama, having lived there for over 30 years.

10. Representative Plaintiff Belinda Stephens and her then minor children, John, Michael, and Anthony Stephens are and have been residents of Sylva, NC, for over ten years, though at the time of Ms. Stephens' divorce, they were all residents of Jefferson County, Alabama.

11. Known defendants Charles Gorham, George Richard Fernambucq, Richard Vincent, and Stephen Wright, and their respective law firms Gorham and Cason, LLC, Boyd, Fernambucq and Vincent, P.C., Najjar, Denaburg, *et al*, P.C., (collectively, "Known Defendant Attorneys"), as well as Judge R.A. Ferguson and John C. Calhoun are individual residents of Jefferson County, Alabama.

12. Unknown defendant attorneys include, but are not limited to, law firms, law partners, members, shareholders, and support staff of Known Defendant Attorneys. Unknown defendant attorneys include other unknown domestic relations attorneys along with corporate entities or other legally recognized entities such as partnerships or LLC's through which such unknown defendant attorneys are engaged in the practice of law in conspiracy with Known Defendant

Attorneys, Ferguson, Calhoun, and other defendants (collectively, "Unknown Defendant Attorneys"). (collectively, "Unknown Defendant Attorneys" and "Known Defendant Attorneys" are hereinafter referred to as "Known and Unknown Defendant Attorneys").

13. "Unknown Coconspirators and Aiders and Abettors" are other unknown persons who were aware of the Enterprise operated as the Club and in the Defendant Judges' courtrooms, including its practices of granting inflated attorney's fees and agreeing through *ex parte* communications to more favorable results in cases of Known and Unknown Defendant Attorneys, splitting illegal Enterprise profits among Known and Unknown Defendant Attorneys along with Ferguson and Calhoun, who financially benefited from the Enterprise's wrongdoing, who maintained their silence, and who conspired to and did provide substantial assistance and the "cover" of legitimacy to the criminal Enterprise; such Unknown Coconspirators and Aiders and Abettors include, but are not limited to, club members referred to by Known Defendant Attorneys as Calhoun's cardiologist, a welder, an anesthetist, a police officer, and an accountant.

<u>FACTS</u>

14. Prior to 1993, Known Defendant Attorneys, Calhoun,

and Unknown Coconspirators and Aiders and Abettors were controlling members of a hunting club[7] ("Club"); thereafter, the Club was converted by such controlling defendant attorneys, Calhoun, and coconspirators to an illegal RICO Enterprise. (See ¶94 et seq)

15. Beginning in 1993 with Calhoun's judicial nomination process and prior to the judicial appointment of John Calhoun (**nonimmune** predicate acts of Calhoun), during Calhoun's entire judicial tenure (predicate acts though immune solely as to Calhoun's civil liability), and after Calhoun's removal from office post-2006 (**nonimmune** predicate acts of Calhoun), Known and Unknown Defendant Attorneys along with the Nominating Committee Lawyers and the Unknown Coconspirators and Aiders and Abettors have continually used, profited by, divided among themselves, and invested their illegal Enterprise income into the Enterprise in numerous ways described below.

(a)   Calhoun has judicial immunity as to civil liability for even his bribery based judicial conduct. Judicial immunity is clearly inapplicable to (i) nonjudicial conduct of

---

[7]   Known as The Alabama River hunting club to plaintiffs' best knowledge and belief.

Calhoun's "pay for play" Hobbs Act violations before becoming a judge, (ii) bribery based misconduct as a nonjudicial mediator/arbitrator and money laundering following his removal from judicial office post-1976, (iii) nonjudicial administrative misconduct while serving as a judge, e.g. election fraud, failure to make required reports to the Alabama Ethics Commission, tax fraud associated with his money laundering, and nonjudicial Travel Act violations. Judicial immunity does not extend to misconduct taken in the absence of jurisdiction, e.g. Ferguson's award of discovery sanctions to nonparty lawyers rather than to parties in interest.

(b)   Judicial immunity must be pled as a defense.

(c)   Even immune judicial misconduct constitutes "predicate acts" necessary to establish the required "pattern of predicate acts" necessary to prove racketeering.

16. Calhoun secured his judicial office by "pay for play." (See **nonimmune** Hobbs Act violation, infra p. 30)

17. Any "*arrangement for, charging, or collecting*"

contingent legal fees in divorce or criminal cases is forbidden in Alabama. Calhoun and Ferguson nevertheless conspired and arranged with Known and Unknown Defendant Attorneys as well as Nomination Committee Lawyer defendants to illegally grant such lawyers' contingent, champertous legal fees which said defendants did collect and share with Calhoun and Ferguson as part of their "scheme to defraud" plaintiff parties;

18. Known and Unknown Defendant Attorneys as well as Nomination Committee Lawyers when representing the husband would, due to such conspiracy and "scheme to defraud," not object on behalf of his or her husband/client to the Ferguson or Calhoun order requiring his or her husband/client to pay such excessive illegal contingent fees to opposing coconspiring counsel. (See infra, Clements ¶ 34; Toler ¶'s 35 and 36; and Powell ¶'s 42 and 43).

## DISQUALIFICATION OF JUDGES FERGUSON AND CALHOUN

19. Beginning with his initial appointment, Calhoun was a disqualified judge in all cases in which Known and Unknown Defendant Attorneys as well as Nomination Committee Lawyers appeared;

20. Beginning with his first joining the Enterprise conspiracy, Ferguson was a disqualified judge in all

cases in which Known and Unknown Defendant Attorneys as well as Nomination Committee Lawyers appeared;

21. Circuit Court Judges R. A. Ferguson ("Ferguson") and John Calhoun reached agreements and understandings in conspiracy with Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, and Calhoun to accomplish the Enterprise's Goals[8] and to share in illegal Enterprise income with other such coconspirators. Judges Ferguson and Calhoun have in the past and continue to date of filing taken numerous actions in furtherance of this conspiracy.

22. Ferguson and Calhoun also bargained for and accepted, and said Defendant attorneys paid Ferguson and Calhoun, a *quid pro quo* share of such illegal Enterprise profits. In making and accepting such payments, Ferguson, Calhoun, and said Defendant attorneys engaged in predicate acts of Hobbs Act violations,[9] Travel Act violations,[10] money laundering,[11] monetary transactions violations,[12] and mail and wire fraud.[13] (Two or more predicate acts, i.e. "racketeering activities," constitute a

---

[8] See infra, ¶'s 97- 101.
[9] Infra, ¶ 59 et seq.
[10] Infra, ¶ 67et seq.
[11] Infra, ¶ 72 et seq.
[12] Id.
[13] Infra, ¶ 74 et seq.

"pattern"[14])

23.  In collusion and conspiracy with Known and Unknown Defendant Attorneys, Nomination Committee lawyers, and other conspiring judges in the Tenth Judicial Circuit, Ferguson participated in fraudulent administrative transfer and exclusion of such defendant attorneys' cases from the docket of new Circuit Judge Suzanne Childers.[15] Judge Childers defeated Calhoun in 2006 elections and was not part of the Enterprise's conspiracy. Since taking office Judge Childers has not granted improperly favorable rulings to such defendant attorneys nor approved their excessive illegal attorneys' fees. (Nonimmune, nonjudicial administrative conduct)

24.  Calhoun and Ferguson were each "due process" disqualified pursuant to opinions of the United States Supreme Court disqualifying an Alabama Supreme Court justice in *Lavoie*[16], disqualified pursuant to

---

[14] Infra, ¶102 et seq.

[15] In Fall, 2007, Ferguson and said lawyers conspired to put on a "skit" falsely, unethically, and slanderously portraying Judge Childers as an alcoholic of some ill repute. When the honest and honorable Judge Childers properly and ethically asked for an apology, Ferguson and other coconspirator judge(s) supported and accomplished having all such attorneys' and their law firms' cases permanently transferred away from Judge Childers so they could only be heard by Enterprise member and/or coconspirator judge(s).

[16] Constitutional due process rights render the judgment void when the disqualification "would offer a possible

Alabama Canons of Judicial Ethics statutes,[17] and disqualified pursuant to opinions of both the Alabama Supreme Court[18] and the Alabama Judicial Inquiry Commission ("JIC". JIC Advisory Opinions finding it was "reasonable" to question a judge's impartiality and thereby ruled the judge disqualified on facts comparable to the admissions of Calhoun regarding his acceptance of gifts and favors in the form of hunting privileges are as follows:

(a)   JIC Adv. Opin. 02-803: Judge disqualified if he accepts gifts of ticket to college football game or other events from lawyer with a case pending in his court.

(b)   JIC Adv. Opin. 94-518: Judge disqualified if he accepts loan of computer equipment for use solely in Judge's judicial functions if from a lawyer with a case pending in his court citing Adams v. Commission on Judicial Performance, 882 P.2d 358, 379 (Cal. 1994), "a

---

temptation to the average [judge] … [to] lead him not to hold the balance nice, clear and true." "…to perform its high function in the best way, justice must satisfy the appearance of justice." Aetna Life Insurance v. Lavoie, 475 U.S. 813, 825 (1986), 106 S.Ct. at 1587 (citations omitted).

[17] "Recusal is required under Canon 3C(1) when facts are shown which make it reasonable for members of the public or a party, or counsel opposed, to question the impartiality of the judge." Matter of Sheffield, 465 So.2d 350 (Ala. 1984).

[18] See e.g. Cotton v. Brown, 638 So.2d 870, 872 (Ala. 1994)(judge must initiate his own recusal).

judge's. . . knowing acceptance of favors and benefits having a substantial monetary value from a litigant or attorney whose case presently is pending before the court is **_inherently corruptive, suggesting improper use of the prestige of office_**."(emphasis added).

    (c)    JIC Adv. Opin. 94-514: Judge disqualified if he accepts gift of a smoked turkey from a lawyer with a case pending in his court.

25. Disqualification arose from Calhoun's extremely close, personal relationships with such lawyers[19] (Club roommates for over twenty years; provision of free club membership and invitations; joint vacations) his financial interrelationships with such lawyers both as to the RICO Enterprise conspiracy and their sharing of laundered[20] illegal Enterprise profits with Calhoun.

26. Ferguson was disqualified for acceptance of "laundered"[21] financial payments accomplished through

---

[19] U.S. v. Murphy, 768 F.2d 1518, 1538, (7th Cir., 1985). ("[W]e conclude that an objective observer reasonably would doubt the ability of a judge to act with utter disinterest and aloofness when [Judge] was such a close friend of the prosecutor [Defendant Attorneys] that the families of both were just about to take a joint vacation . . .").

[20] Money Laundering, 18 USC § 1956. See *infra*, ¶72.

[21] Id.

"financial transactions"[22] and otherwise from illegal Enterprise profits made by Known and Unknown Defendant Attorneys and Nomination Committee Lawyers to Ferguson and/or for Ferguson's benefit.

    (a)   Ferguson participated in money laundering for and on behalf of Calhoun following Calhoun's loss of office. Money laundering included ordering payments to lawyers and nonlawyer advisors, e.g. child psychologists, who in turn transferred the money to Calhoun as a "legal consultant" and/or as a mediator.

27. Ferguson, Calhoun, Known and Unknown Defendant Attorneys, and Nomination Committee Lawyers had a fiduciary duty in each case to all parties, opposing counsel, and to the courts to disclose their disqualifying personal and financial interrelationships. Their failure to disclose rendered any judgment or order entered in such cases by Calhoun and/or Ferguson either void or voidable.[23]

    (a)   This honorable federal court does not have jurisdiction to render final Alabama domestic

---

[22] Monetary Transactions, 18 USC §1957. See *infra*, ¶72.

[23] Lavoie, *supra*, Note 16, at 828-829 ("we are aware of no case, and none has been called to our attention, permitting a court's decision to stand when a disqualified judge casts the deciding vote;" Judges Ferguson and Calhoun, of course, without a jury cast the one and only vote in their courtrooms.) See discussion of *Edwards* and "Scheme to Defraud", *infra* at ¶ 79.

relations cases void and is not being asked to exercise any such jurisdiction. Jury findings as to the disqualification of Ferguson and Calhoun go to the federal question of racketeering predicate acts, e.g. mail fraud as the result of plaintiff class members paying for valid decrees but receiving decrees of "questionable validity" as found in *Edwards* on nearly identical facts.[24]

(b)     In *Edwards*, this very federal district court for the Northern District of Alabama held that corrupt Alabama domestic relations judges and lawyers were guilty of mail fraud as the result of a jury finding that their clients paid for valid Alabama divorce decrees but received decrees of "questionable validity." This finding did not result in overturning or reversing a single Alabama domestic relations decree, but did result in federal mail fraud convictions for such conspiring Alabama divorce lawyers and judges.[25]

28. Ferguson, Calhoun, Known and Unknown Defendant Attorneys as well as Nomination Committee Lawyers

---

[24] See discussion of *Edwards* and "Scheme to Defraud", *infra* at ¶ 79.
[25] Id.

owed *fiduciary*[26] duties and a duty of honest services to all clients and opposing parties and all such parties (Mr. and Mrs. Clement, Mr. and Mrs. Toler, Powell, Belinda, John, Michael, and Anthony Stephens and other members of the Plaintiff Class) necessarily relied upon them to fulfill their fiduciary obligations of full disclosure.

29.   Beginning in approximately 1998, the Known and Unknown Defendant Attorneys used and invested additional illegal income from their Enterprise and acquired a leasehold interest in a larger 2,700 acre plantation for hunting from International Paper Company for use of the Enterprise which they invested in, operated, conducted, funded, and controlled within the Enterprise;

30.   At that time in early 1998, the four Known Defendant Attorneys began directly paying all of Calhoun's Club dues and costs (and paid those same costs for the benefit of the Unknown Coconspirators and Aiders and Abettors who were Club members and who provided a "cover" of legitimacy), including leasehold costs in excess of $27,000 per year; other

---

[26] *Maiz v. Virani*, 253 F.3d 641, 675 (11th Cir. 2001) ("…This court and others **have long recognized that where such a [fiduciary] relationship exists, any obligation of due diligence may be excused**, because the plaintiff is *entitled to assume* that the fiduciary is protecting his interests.")

operating costs came up to a combined total of $50,000 to $100,000 annually.

31. Under Alabama Ethics Commission law, as well as Alabama and federal tax law, Ferguson, Calhoun and the aforesaid Known and Unknown Defendant Attorneys were required to *administratively report* the fair market value of all such financial benefits to the Alabama Ethics Commission and include them as income on tax reporting forms. Such reports to the Ethics Commission were not made during Calhoun's tenure and such amounts were never reported as required for Alabama or federal income tax purposes (**nonimmune**, nonjudicial administrative predicate acts by Calhoun, and similarly by Ferguson,[27] including money laundering violations).

32. Toler, Clement, Powell, Belinda Stephens, and all other legal clients and victims of the Enterprise made payments to the Known and Unknown Defendant Attorneys and Nomination Committee Lawyers and said Defendants did deposit such illegal income using "monetary transactions" by sending checks and receiving checks drawn on and/or deposited into national banking institutions through the U.S. mails in payment for the "honest services" of such lawyers and law firms which said Plaintiffs did not receive.

---

[27] See *supra*, ¶ 26.

(See e.g. infra, ¶'s 72 (monetary transactions violations) and 74 (Honest Services mail fraud).

## REPRESENTATIVE PLAINTIFF CLEMENTS

33.  At the beginning of Clements' case in 2006, both Gorham and Calhoun failed and refused to make required full disclosure of their respective conflicts of interest to Mr. or Mrs. Clements and failed and refused to disclose the necessary and substantially adverse impact such conflicts had on the legitimacy and validity of any orders coming out of the case. (See infra, ¶78 et seq)

34. Clements paid Gorham legal fees and costs in excess of $25,000 for a valid divorce decree and for honest legal services which Clements did not receive, lost well in excess of $100,000 in property and income as a result of the void or voidable Calhoun judgment, and unnecessarily incurred and wasted over $15,000 in post-judgment legal fees based on a wholly inadequate, incomplete appellate record due to said Defendants' misrepresentations and failure to disclose on the court record. These injuries were proximately caused by the predicate acts of all Defendants as described herein. ($140,000+ in injuries).

## MR AND MRS TOLER – CLASS MEMBERS

35. In September, 1994, Robert Toler paid Fernambucq a
    $10,000 retainer for honest services and a valid
    divorce decree which Toler did not receive. During
    the litigation Toler paid Fernambucq an additional
    $20,000, other costs of $12,000, and paid over
    $45,000 in appellate and other postjudgment
    attorneys' fees (based on a wholly inadequate and
    incomplete appellate record caused by nondisclosure
    and suppression of facts on the record), all damages
    proximately caused by the predicate acts of all
    Defendants as described herein.

36. At the conclusion of his case, Toler (husband) was
    ordered by Calhoun to pay $7,300 additional
    contingent legal fees to Gorham as Ms. Toler's
    attorney; Gorham's client contracts provided that his
    clients, such as Ms. Toler, did not receive credit
    for any such contingent, additional fees ordered to
    be paid by the court (Calhoun) and that the full
    contract legal fee was still payable to Gorham by the
    client, Ms. Toler, i.e. contractually the entire
    $7,300 would go directly into Gorham's pocket; such a
    contract constituted a fraud on Ms. Toler as well as
    on the court and its equitable judicial processes.
    ($87,000 + $7,300 in injuries to property + over
    $100,000 injury to Toler's business)

37. Calhoun did not recuse himself and neither

Fernambucq nor Gorham withdrew from the Toler case as mandated by Alabama law and due process and they knowingly suppressed and misrepresented their conflicts of interest.

38. In May, 2004, Mr. Toler's separate child custody case and defendants' related deceit as the result of nondisclosure of material conflicts of interest by Gorham and Calhoun began and continued through date of issuance of an opinion; Calhoun peremptorily entered a favorable judgment for Gorham's client in what the appellate court later referred to as "entry of a favorable judgment before the close of the presentation of all of the evidence" thereby "pretermitting the father's [Toler's] claim without hearing."[28] (Issuance of an Order is a Predicate act, even though judicial conduct and ***immune*** as to Calhoun's and/or Ferguson's civil liability).

39. Upon remand in early Fall, 2006, Calhoun ruled for Mr. Toler solely because Calhoun was opposed in his November, 2006, reelection and Mr. Toler worked actively for Calhoun's opponent. Yet, in prohibited, *ex parte* undisclosed communications in furtherance of the Enterprise Calhoun assured Gorham that Calhoun would reverse the Order in favor of Gorham's client, Ms. Toler, immediately upon being reelected. This

---

[28] Toler v. Toler, 947 So.2d 416, 429, (Ala.Civ.App., 2006.)

clearly constituted fraud on Ms. Toler, Mr. Toler, the child, the judicial process, and fraud on Alabama election processes.

40. Pursuant to Alabama Canons of Judicial Ethics (statutory law in Alabama) the only way for Calhoun to have such conflicts of interest waived in the Toler, Clement, Stephens, and Plaintiff Class cases is to have made a full disclosure of his conflicts of interest and his disqualification on the record prior to accepting the case and thereafter obtained a written waiver of the conflicts signed by all counsel and by all parties; no such disclosure was made and no such written waiver of conflicts was ever obtained or placed in the record of Toler, Clements, Stephens or any case during Calhoun's or Ferguson's tenure.

## Representative Plaintiff Richard M Powell

41. Representative plaintiff Richard M Powell (hereinafter "Powell") filed a motion for modification of alimony before Ferguson on May 21, 2009. Neither Ferguson nor coconspirator attorney representing defendant party Ms. Powell informed either party that Ferguson was a disqualified judge due to his racketeering conspiracy.

42. Ferguson ruled on the motion on June 8, 2009. Ferguson fraudulently granted coconspirator attorney

for Defendant Powell's wife an inflated attorney fee
to be paid by Powell directly to the attorney of
$12,500. With no required pretrial discovery hearing
or record as mandated by Alabama law and with no
jurisdiction under Alabama law including Alabama
Rules of Civil Procedure[29] to do so, Ferguson
fraudulently awarded coconspirator attorney for
Defendant Powell's former wife a discovery "sanction"
of $12,500. Ferguson, without jurisdiction,
fraudulently ordered such sanction payable by Mr.
Powell directly to the defendant's coconspirator
attorney and not to the party in interest, defendant
Ms. Powell, as the supposedly wronged party.
Sanctions under federal or state rules are paid to
the party in interest but are used by Ferguson and
the Enterprise to illegally inflate conspiring
attorneys' incomes wholly without basis or notice and
constituted a violation of due process.[30]

---

[29] See ARCP Rule 37. No discovery sanctions awarded without
a pretrial motion and order to compel discovery. Any
sanctions awarded, including "cost" of attorneys' fee, are
payable to the party, not to the attorney. Payment directly
to the attorney was a fraudulent award by Ferguson of
inflated attorneys' fees in furtherance of the Enterprise
and wholly without jurisdiction.

[30] *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116
S.Ct. 1589 {U.S., 1996.)There was no jurisdiction or due
process notice that Mr. Powell would be subjected to
payment of any punitive sanctions whatever, much less
payment to a nonparty. Only "cost" can be awarded as a
financial discovery sanction and only after a full hearing,
entry of a specific discovery order, and proof of violation

not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.

43. Ferguson's June 8, 2009, award of the sanction and its payment directly to the coconspirator defendant's attorney on behalf of the Enterprise violated the right to honest services owed to Powell and Powell's former wife as parties to the action and was wholly without jurisdiction in Ferguson. (Hobbs Act, Travel Act violations, Money Laundering and Monetary Transaction violations; mail and wire fraud, including loss of honest services fraud, with particularity as to who, what, and when).

<u>REPRESENTATIVE PLAINTIFF BELINDA STEVENS AND HER THEN MINOR CHILDREN JOHN STEVENS, MICHAEL STEPHENS, AND ANTHONY STEPHENS</u>

44. Representative plaintiff Belinda Stephens (hereinafter "Stephens") has resided in Sylva, NC, for over 10 years and travels interstate to appear before Jefferson County's domestic relations courts.

45. Stephens' 1998 divorce, child custody, and child support case had been heard by John Calhoun and was subject to the continuing jurisdiction in the court

---

of such discovery order. "Cost" sanctions payable to the opposing party, not their attorney.

of Judge Suzanne Childers who replaced Calhoun effective January 1, 2007.

46. At the beginning of Ms. Stephens case in 1998, during the case, and thereafter, Calhoun and Wright did not inform either party of their longstanding personal and financial interrelationship, the resulting disqualification of Calhoun as judge, nor any details of their racketeering conspiracy and its adverse implications on the validity of any judgment or order issued by Calhoun.

47. In 1998, Stephens lost over $100,000 in money and property as the proximate result of Calhoun's, Known and Unknown Attorney Defendants', Nomination Committee lawyers', and Unknown Coconspirators, Aiders, and Abettors' predicate acts of sale of Calhoun's office, Travel Act violations, money laundering, monetary transactions, and mail and wire fraud.

48. Ms. Stephens had seven (7) children born during the marriage that she cared for at home and she could not and did not work outside the home. She not only lacked formal work experience outside the home, but lacked a formal higher education.

49. In October, 2004, a hearing was held before Calhoun to modify the divorce order to require that her

affluent,   multimillionaire   husband   pay   for   the college education of Ms. Stephens' triplets who were still minors.[31]

50. Ms. Stephens arrived at court to discover Calhoun as judge engaged in an *ex parte* conference with Wright, Wright's defendant client Mr. Stephens, and Mr. Stephens' new wife, with whom he'd admittedly had a long-time affair during his marriage to Ms. Stephens. Calhoun refused to apprise Ms. Stephens or her attorney of the matters discussed at length *ex parte*.

51. The trial was as unfair and biased as the *ex parte* pretrial conference among Wright, Calhoun, and the defendant parties had assured. Calhoun threatened Ms. Stephens, a mother of seven (7), saying he would "throw [her] ass in jail" merely as the result of a simple question to her lawyer.

52. Ms. Stephens' lawyer, after observing Calhoun's openly hostile, clearly partial conduct and after being threatened by Calhoun, advised Ms. Stephens to withdraw her motion because Calhoun intended to take away what little child support she was receiving if she did not withdraw the motion.

53. As   the   direct   proximate   result   of   failure   to

---

[31] John (1st Triplet) was an A,B student, Michael (2nd Triplet) was an A,B student, Anthony, (3rd Triplet) was a straight A student.

disclose their disqualifying relationship and
Calhoun's and Wright's other predicate acts in
furtherance of the Enterprise's illegal goals, the
Stephens triplets, John, Michael and Anthony, each as
minors, lost more than $75,000 in money and property
as legally mandated support necessary for them to
complete their high school and college educations.

54. As the direct proximate result of failure to
disclose their disqualifying relationship and
Calhoun's and Wright's other predicate acts in
furtherance of the Enterprise's illegal goals, Ms.
Stephens put herself inextricably in debt to provide
her children with their legal right under Alabama law
to a high school and college education. As a direct
result of Calhoun's and Wright's predicate acts in
furtherance of the Enterprise's illegal goals Ms.
Stephens is losing her and the childrens' home due to
foreclosure in August, 2009, at the time of filing
this action. The loss proximately caused to Ms.
Stephens by the Enterprise and predicate acts of
stated defendants is in excess of $250,000 in money
and property.

55. In 2006, Ms. Stephens again filed a motion on behalf
of herself and her children for high school and
college support education costs. Judge Childers was
not a member of or coconspirator with the Enterprise

and had not continued Calhoun's, Ferguson's, or other Enterprise coconspirators' biased rulings or grant of inflated illegal attorneys' fees.

56. Ferguson, Nomination Committee lawyers, and Known and Unknown Attorneys successfully conspired and took action with other coconspirator judge(s) to have all such lawyers' cases transferred to such conspiring judges and away from nonconspirator Judge Childers.[32]

<u>ENTERPRISE IS ENGAGED IN INTERSTATE COMMERCE</u>

57. The Enterprise consisting of the Known and Unknown Defendant Attorneys, the Club, and the domestic relations courts of Defendants Calhoun and Ferguson is engaged in interstate commerce in all its activities, e.g. the Club's purchases of whiskey, food, and interstate travel; the court's and firms' dealings with parties and witnesses from multiple states (Stevens has lived in North Carolina for over 10 years), as well as the courts' and related law firms' own administrative functions, including purchasing of equipment, supplies, furniture and furnishings, in interstate commerce, and Enterprise financial transactions with interstate banks and other interstate financial institutions.[33]

---

[32] See *supra*, ¶ 23.

[33] See U.S. v. Murphy, 768 F.2d 1518, 1530-1531, (7th Cir.

58. Known and Unknown Defendant Attorneys and Nomination Committee Lawyers communicated and transmitted documents to Clements, Toler, Powell, and Belinda Stephens (as well as Mrs. Clements, Mrs. Toler, Mrs. Powell and Mr. Stephens) and all other legal clients and victims of the Enterprise, through use of the U.S. mails and telephone.

<u>RACKETEERING ACTIVITY No. 1 - INTERFERENCE WITH INTERSTATE COMMERCE THROUGH HOBBS ACT EXTORTION UNDER COLOR OF RIGHT-§1951</u>

59. Hobbs Act-interference with commerce through extortion (§1951):

> (a) Whoever **in any way or degree. . . affects commerce** . . . by . . . **extortion** or attempts or **conspires so to do** . . . in furtherance of a plan or purpose to do anything in violation of this section . . . (b) As used in this section--
>
> (2) The term "extortion" means the **obtaining of property from another,**

---

1985) ("the bribes paid to [judge] Murphy "depleted the assets" of the lawyers who paid them, and that the lawyers regularly purchased items in interstate commerce. . . regularly purchased law books from out of state. . . purchased envelopes and stationery from New York. This and other evidence showed a regular connection between the lawyers and interstate commerce. . . The statute reaches those who affect commerce "in any degree," and in a complex economy almost any movement of funds affects commerce to some degree.) U.S. v. Conn, 769 F.2d 420, 423, (7th Cir. 1985).("Cook County Circuit Court purchased equipment and office supplies from companies located outside the State of Illinois. The interstate commerce requirement was met.")

**with his consent . . . under color
of official right.[34]**

60.  The U.S. Supreme Court has held that the words of
the Hobbs Act "do not lend themselves to restrictive
interpretation" because they 'manifes[t] ... a
purpose to use all the constitutional power Congress
has to punish interference with interstate commerce
by extortion [under color of right]. . .' "[35]

61. In 1993 before his judicial nomination or
appointment (**no judicial immunity**), Calhoun reached
an understanding and agreement, i.e. a conspiracy,
with Known and Unknown Defendant Attorneys and
Nomination Committee Lawyers. Said Defendant lawyers
agreed to support Calhoun's nomination for a vacant
domestic relations judgeship in Alabama's Tenth
Judicial Circuit, provide future reelection financial
support, and in the future share their illegal
Enterprise profits with Calhoun. Calhoun in turn
agreed that he would give said Known and Unknown
Defendant Attorneys and Nomination Committee Lawyers
preferred treatment in his court. Such conspiracy and
subsequent actions of all the foregoing included
grant of better outcomes for their clients and
inflated, champertous legal fees; in more current

---

[34] 18  U.S.C.  §1951 (emphasis added).
[35] Scheidler v. National Organization for Women, Inc.
537 U.S. 393, 123 S.Ct. 1057 (2003).

vernacular, "pay for play."

62. Under *Evans*, in the Eleventh Circuit that is a completed Hobbs Act violation prior to Calhoun's judicial appointment.[36] (**Nonimmune** Hobbs Act violation). Unlike bribery, official conduct or action as a *quid pro quo* is **not** an element of a Hobbs Act violation. (See *Evans v. United States*, 504 U.S. 255, 112 S.Ct. 1881, 119 L.Ed.2d 57, (1992).

63. A defendant does not have to be a public official to violate the Hobbs Act in conjunction and conspiracy with and/or by aiding and abetting a public official.[37]

---

[36] In *Evans*, the United States Supreme Court affirmed the Eleventh Circuit's statement of a Hobbs Act violation - ' 1951. (The Supreme Court Held: An affirmative act of inducement by a public official . . . is not an element of the offense of extortion under color of official right. . . and neither is provision of any *quid pro quo*, i.e. conduct by the public official or private party is not an element of extortion. *Evans*, at 255).

[37] See *U.S. v. Brock*, 501 F.3d 762, 768-769 (6th Cir. 2007). "The government remains free to charge private individuals with violating the Hobbs Act when they conspire with public officials or aid and abet them in an extortion scheme; it just must satisfy the "property from another" and "with his consent" requirements in doing so. See *United States v. Collins*, 78 F.3d 1021, 1032 (6th Cir.1996) (upholding a conviction of a Kentucky governor's husband for a conspiracy to extort political contributions and investments in a thoroughbred partnership in exchange for access to state contracts); *United States v. Kelley*, 461 F.3d 817, 826 (6th Cir.2006) (upholding the conviction of a county executive's wife for "conspiring with a public official to commit extortion" where the public contracts

64. Calhoun, Nomination Committee Lawyers, and Known and Unknown Defendant Attorneys can and did violate the Hobbs Act by conspiring with Calhoun in selling Calhoun's public office *before* he was appointed or elected to office.[38]

65. Members of the Plaintiff class, including Toler, Clement, and Powell consented to payments to Known and Unknown Defendant Attorneys as agents for the Enterprise by reason of extortion through fraudulent, void or voidable Calhoun and Ferguson court orders under color of official right.[39]

66. Acceptance of said financial benefits and payments by Ferguson, Calhoun, Unknown Coconspirators and Aiders and Abettors, Known and Unknown Defendant Attorneys, and Nominating Committee Lawyers, also constituted money laundering and illegal monetary transactions as described *infra*, ¶ 72, *et seq.*

---

were to be granted in exchange for private financial gain).
[38] *U.S. v. Meyers*, 529 F.2d 1033, 1037-1038. (7th Cir. 1976)." "We think that it is no less of a crime under the Hobbs Act to sell one's public trust before, rather than after, one is installed in public office. The issue squarely put is: Can a private citizen, who has been nominated for office,[John Calhoun-in 1993]but not elected, extort money under color of official right. . . . within the meaning of the Hobbs Act, it is a crime for candidates for political office to conspire to affect commerce by extortion induced under color of official right during a time frame beginning before the election. . ."(Emphasis added)
[39] See supra, ¶'s 34, 35-36, 42, 52-53.

66. <u>Injuries</u>  Specific,  concrete  injuries  to  money, property,  and  business  proximately  caused  thereby include  Clement  -  $140,000+;  Toler  -  $194,300+; Powell  -  $75,000+;  Stephens  -  $250,000+;  Stephens triplets - $75,000+ each.[40]

RACKETEERING ACTIVITY NO. 2
TRAVEL ACT. - § 1952.

67.  Interstate  and  foreign  travel  or  transportation  in aid of racketeering enterprises.-

> (a) Whoever travels in interstate or foreign commerce **or** uses the mail **or** any facility in interstate or foreign commerce,[41] with intent to—
>     (1) distribute the proceeds of any unlawful activity; or
>     (3)  otherwise  promote,  manage, establish,  carry  on,  or  facilitate the  promotion,  management, establishment, or carrying on, of **any unlawful activity**, **and thereafter** performs **or** attempts to perform--

---

[40] See supra, ¶'s 34, 35-36, 42, 52-53.

[41] Effect on interstate commerce is a jurisdictional requirement of the Travel Act, and "is a substantive element of Travel Act offenses that must be decided by a jury". The interstate commerce requirement is merely jurisdictional and can be satisfied with minimal effect on interstate commerce, and the minimal effect need not be adverse. See, e.g., United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir.2000) (Plaintiffs need only to establish a minimal effect on interstate commerce).

> (A) an act described in paragraph (1) **or** (3) [violates this act];
>
> (b) As used in this section. . . **"unlawful activity" means** – (2) extortion, bribery, or arson in violation of the laws of the State in which committed **or** of the United States, **or** . . . under section 1956 or 1957 of this title [monetary transactions and money laundering] . . .

68. The phrase "in interstate commerce" has been held to include use of an interstate facility even if such use is *solely intrastate*.

> [T]he Fifth Circuit, in *United States v. Marek*, 238 F.3d 310 (5th Cir.2001), interpreted that language [in interstate commerce] as covering any use-*intrastate or interstate*-of an interstate commerce facility. The Seventh Circuit, in United States v. Richeson, 338 F.3d 653 (7th Cir.2003), similarly read . . . [in interstate commerce]jurisdiction language as "requir[ing] that **the facility, and not its use**, be in interstate or foreign commerce." Id. at 660.[42]

69. Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Ferguson, Calhoun, and the Unknown

---

[42] U.S. v. Drury, 396 F.3d 1303, 1311, (11th Circuit, 2005)(emphasis added). Drury, Marek, and Richeson were all interpreting the same "in interstate commerce" language in the context of § 1958 which itself was modeled after the Travel Act.

Coconspirators and Aiders and Abettors did travel in interstate or foreign commerce and used the mails, interstate highways, interstate financial institutions, and/or used other facilities in interstate commerce,[43] with intent to and did promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on of "unlawful activit(ies)." (Nonimmune, nonjudicial conduct).

70. Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Ferguson, Calhoun, and the Unknown Coconspirators and Aiders and Abettors did perform and attempt to perform unlawful activities. The "unlawful activities" constituted extortion in the second degree and bribery under Alabama law, extortion under color of right violating the Hobbs Act, money laundering, mail fraud, and wire fraud.

a. Bribery (Alabama Code, 1975, §13A-10-61(a)(1)): Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, and the Unknown Coconspirators and Aiders and Abettors conferred Calhoun's judicial nomination, Calhoun's *gratis* Club privileges, and other financial benefits and payments on Defendants Calhoun and Ferguson; Club privileges, campaign contributions, and direct

---

[43] See e.g. *supra*, ¶ 57.

financial payments were "things of value", and cost said defendant attorneys more than $1,000 per year; said defendant attorneys intended to provide this benefit in return for favorable judgments, illegal champertous attorney fees, and other judicial favors from said defendants Calhoun and Ferguson.

b. Bribery (Alabama Code, 1975, §13A-10-61(a) (2)): Defendant Judges Calhoun and Ferguson agreed to provide and did provide favorable judgments, contingent legal fees, and other financial benefits to Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Calhoun, and the Unknown Coconspirators and Aiders and Abettors in exchange for Calhoun's judicial appointment, Calhoun's *gratis* Club privileges, campaign contributions, other financial benefits, and "things of value" to both Ferguson and Calhoun which cost said defendant attorneys more than $1,000 per year.

c. Extortion in the Second Degree (Alabama Code §§13; 13A-8-15(a)): Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Calhoun, and the Unknown Coconspirators and Aiders and Abettors procured money by threat to Clement, Toler, Powell, Stephens, and Plaintiff Class members with the intent to deprive Plaintiff

class of that money; that threat was accomplished
by court order or threat of court order, which is
a "menace . . . to take action as an official
against anyone or anything, or withhold official
action, or cause such action or withholding."
(Alabama Code, 1975, §13A-8-1(13)(i)).

71. <u>Injuries</u>.  Travel Act violations described herein
proximately caused and were a substantial factor in
the chain of causation resulting in injury of
Plaintiff class members' property and business
interests [Clement - $140,000+; Toler - $194,300+;
Powell - $75,000; Stephens - $250,000+; and the
Stephens triplets - $75,000+ each].[44]

<u>RACKETEERING ACTIVITY No.'s 3 and 4 – MONEY LAUNDERING
AND MONETARY TRANSACTIONS-18 U.S.C. §1956 and §1957</u>

72. Inside the United States, through United States
financial institutions, Known and Unknown Defendant
Attorneys, Nominating Committee Lawyers, Calhoun,
Ferguson, and the Unknown Coconspirators and Aiders
and Abettors knowingly used proceeds of a value
greater than $10,000[45] derived from their criminal
offenses[46] in monetary transactions affecting
interstate commerce[47] to promote and carry on their

---

[44] See supra, ¶'s 34, 35-36, 42, 52-53.
[45] See e.g. ¶ 29 et seq.
[46] Hobbs Act, Travel Act, Mail and Wire Fraud.
[47] See supra, ¶'s 57, 34, 35-36, 42, 52-53.

unlawful activities through the Enterprise with the clear intent to and they did violate §7201[48] and §7206[49] of the Internal Revenue Code of 1986 (nonjudicial, *nonimmune* conduct); and knew and designed the financial transactions of investing in and operating the Club to conceal and disguise the nature, the location, the source, the ownership, and/or the control of the proceeds of the unlawful activities specified in 42 U.S.C. §1956(c)(7); and intended to and did avoid transaction reporting requirements under State and/or Federal law, e.g. failure to file required 1099 forms to report illegal income paid to Defendants Calhoun and Ferguson. All aforesaid Defendants did thereby violate 18 U.S.C. §§ 1956 and 1957 (money laundering and monetary transactions).

73. <u>Injuries</u>. Specific, concrete injuries to money, property, and business proximately caused thereby include Clement - $140,000+; Toler - $194,300+;

---

and infra, ¶'s 74 et seq.
[48] §7201. Attempt to evade or defeat tax.
Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony.
[49] §7206. Fraud and false statements. Any person who--"(1).--Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;" has violated §7206.

Powell - $75,000+; Stephens - $250,000+; Stephens triplets - $75,000+ each.[50]

### RACKETEERING ACTIVITY No's 5 and 6 – MAIL AND WIRE FRAUD

74. Elements of a civil Racketeer Influenced and Corrupt Organizations Act (RICO) claim predicated upon mail or wire fraud[51] are: (1) using mails or wires, (2) Defendants intentionally participated[52], (3) in a scheme to defraud,[53] and (4) plaintiffs suffered injury in money, property (including loss of Honest Services) or business interests as the proximate result thereof.

75. Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Calhoun, Ferguson, and the Unknown Coconspirators and Aiders and Abettors, through the Enterprise, used mails and wires in furtherance[54] of

---

[50] See supra, ¶'s 34, 35-36, 42, 52-53.
[51] The substantive elements of mail and wire fraud are identical. See *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir.1991). Both offenses consist of (1) intentional participation in a (2) scheme [or artifice] to defraud another (3) of "money or property" [§1346-"property" specifically includes the intangible right of "honest services"], and (4) using mails and wires in furtherance of such scheme.
[52] *U.S. v. Antico*, 275 F.3d 245, 264 (3d Cir. 2001). In honest services fraud, where there is a fiduciary duty to disclose, whether in the private or public sector, active fraud is not required-"[A]n official's [judge or lawyer's] intentional violation of the duty to disclose provides the requisite intent."
[53] See infra, ¶ 78.
[54] This requirement is merely jurisdictional – the mailing itself need not be fraudulent.

the scheme to defraud.[55]

76. Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Calhoun, Ferguson, and the Unknown Coconspirators and Aiders and Abettors did intend to participate.[56] In the context of the said Defendants' false and fraudulent statements, including failure to disclose and suppression of material conflicts of interest as described herein, the Defendants in each and every instance made the material misrepresentation or suppressed the material facts willfully and knowingly in concert with their longstanding conspiracy and enterprise to deceive, recklessly without knowledge or innocently by mistake; such omissions and misstatements were reasonably calculated to deceive persons of ordinary prudence and comprehension and were intended for members of the Plaintiff class to rely on the false statements, and class members did reasonably rely and were proximately injured in their money, business and property. (**Judicial immunity**, if applicable, must be pled as a defense for Ferguson and Calhoun).

77. <u>Injuries</u>. Specific, concrete injuries to money,

---

[55] See *supra*, ¶'s 57, 68, 69, and 72 and infra, ¶ 78 (sending fraudulently obtained court orders; sending fees extorted under color of right).

[56] Intent can be averred generally. See *Grover v. Commercial Ins. Co. of Newark, N.J.,* 108 F.R.D. 366, 369, (D.C.Me.,1985).

property, and business proximately caused thereby
include Clement - $140,000+; Toler - $194,300+;
Powell - $75,000+; Stephens - $250,000+; Stephens
triplets - $75,000+ each.[57]

PLEADING SCHEME TO DEFRAUD WITH PARTICULARITY.

78. Defendants Calhoun, Ferguson, Known and Unknown
Defendant Attorneys, and Nominating Committee Lawyers
have a fiduciary obligation and legal duty to fully
inform and communicate with all clients and all
parties. Such lawyers also have a duty *not* to accept
a case if it involves a conflict of interest.[58]
Similarly, all Defendant judges have an obligation to
initiate their own recusal when their partiality
might reasonably be questioned. (*Cotton, supra*, p.
10, ¶ 24).

a. "Intent" is pled generally.[59] "[A]n official's [or
lawyer's] intentional violation of the duty to
disclose provides the requisite intent." See *U.S.
v. Antico*, 275 F.3d 245, 264 (3d Cir. 2001).

79. Scheme to defraud.[60] Deceit includes "paying for one

---

[57] See supra, ¶'s 34-36, 42, and 53-54.
[58] Id, AL MRPC, Rule 1.7.
[59] Intent can be averred generally. *See Grover v. Commercial
Ins. Co. of Newark, N.J.,* 108 F.R.D. 366, 369,
(D.C.Me.,1985)."
[60] See e.g. ¶ 19 – 53. (deceit through specified material
misrepresentations at specified times, stating who engaged

thing and receiving another". (See a. below)

a. As the Fifth Circuit (binding precedent in the Eleventh Circuit) stated in *Edwards* (*U.S. v. K.C. Edwards*, 458 F.2d 875, 881 (5th Cir 1972)) [originated in this Northern District of Alabama also involved corrupt Alabama divorce lawyers and judges guilty of mail fraud],

> "The indictment thus charges that the prospective divorcees **paid for one thing and received another.** It is well recognized that any scheme to deceive as to the substantial identity of the thing received may be prohibited by the mail fraud statute . . . Defendants' customers [clients] in the instant case **were led to believe they were receiving valid . . . divorce decrees.** In fact, they were **receiving . . . decrees . . . of questionable validity.** It is not enough for defendants to allege that the law of Alabama as to the validity of these divorces is unsettled and that no one knows whether they are valid or not."

80. Just as stated in *Edwards, (supra*), Representative Plaintiffs and members of the Plaintiff Class "paid for one thing and received another."

81. Plaintiff class members (in reliance on nondisclosure of conflicts of interest, and the resulting materially false appearance of honest judges and lawyers) paid for valid enforceable

---

in the deceit and who was deceived and defrauded thereby).

divorce decrees under Alabama law, but the decrees and orders issued were of "questionable validity" – the decrees were either void or voidable.[61] (The *Edwards* jury found and the court held the Alabama decrees to be "questionable" solely for purposes of federal mail fraud – finding did not result in voiding a single Alabama divorce decree and Plaintiffs do not assert or ask this court to invalidate a single Alabama divorce decree.)

82. Plaintiffs reasonably relied upon the false appearance of honest dealings related to Defendants' material nondisclosure which was reasonably calculated to deceive persons of ordinary prudence and comprehension and on which Clement, Toler, Powell, and Stephens and other class members were intended to and did rely proximately resulting in loss of money, property and business.

83. Decrees and orders issued to class members Clement, Toler, Powell, and Stephens were issued by disqualified judges Calhoun and Ferguson[62] whose material disqualification was intentionally

---

[61] See e.g. *Lavoie* at 827-828, *supra*, Note 16 ("we are aware of no case, and none has been called to our attention,*828 permitting a court's decision to stand when a disqualified judge casts the deciding vote."); *Smith v. Clark* 468 So.2d 138, 141 (Ala.,1985.)(judgment is void if violation of due process)
[62] See *supra*, ¶ 19.

suppressed and such Plaintiffs reasonably relied upon the materially false impression and were proximately injured thereby in their money, business, and property.

84.  Plaintiff class members, including Clement, Toler, Powell, and Stephens, in reasonable reliance of expecting to receive valid divorce decrees and orders, paid their Defendant Lawyers Fernambucq, Wright, Vincent, Gorham, Unknown Defendant Attorneys, and unknown Nomination Committee lawyers for valid, enforceable divorce decrees and judgments rendered in compliance with Alabama law. They received void or voidable decrees and orders, i.e. decrees and orders of "questionable validity", due to said Defendants' intentional failure and refusal to disclose material conflicts of interest, judges Calhoun and Ferguson's failures to recuse themselves, and said Defendant Lawyers' wrongful acceptance of such cases which constituted a violation of due process and breaches of ethical and fiduciary standards imposed upon lawyers and judges.

85.  Plaintiffs were proximately injured in their money, business, and property as a result of their reasonable reliance on Defendants' material refusal to act or to disclose. [Clement - $140,000+; Toler - $194,300+; Powell - $75,000+; Stephens - $250,000+;

Stephens triplets - $75,000+ each][63]

86. "Scheme or artifice to defraud another of property using the mails and wires." "Property" includes the intangible right to "honest services" in both the public and private sectors. 18 U.S.C. §1346.

87. The Eleventh Circuit Court of Appeals, and the Fifth Circuit before it -

> consistently have held that schemes by government officials to **deprive the public of its right to their honest services, when a mailing is involved, constitute mail fraud.** *See, e.g., United States v. Castro,* 89 F.3d 1443 (11th Cir.1996); *Waymer,* 55 F.3d 564; *Steiner v. United States,* 134 F.2d 931 (5th Cir.), *cert. denied,* 319 U.S. 774, 63 S.Ct. 1439, 87 L.Ed. 1721 (1943); *Shushan,* 117 F.2d 110.
> \* \* \* \* \*
> See Shushan, 117 F.2d at 115 (noting that "[n]o trustee has more sacred duties than a public official"). . . If the official instead **secretly makes his decision based on his own personal interests-as when an official . . . personally benefits from an undisclosed conflict of interest**[64] - the official has defrauded the public of his honest services.[65]

---

[63] See supra, ¶'s 34, 35-36, 42, 52-53.

[64] As did lawyer members of the Nominating Committee who made their decision based on their own undisclosed personal conflicts of interest in 1993 as did judges Calhoun and Ferguson in innumerable court orders involving their undisclosed personal conflicts of interest·

[65] *U.S. v. Lopez-Lukis,* 102 F.3d 1164, 1169, (11th Cir,

88. The scheme to defraud Plaintiffs and the electorate **began in 1993** by deceit by the unknown Nominating Committee Lawyers in failing to disclose their material conflicts of interest in nominating Calhoun, i.e. loss of their honest services, and by Calhoun's material nondisclosure of his commitment to provide future financial benefits to Nominating Committee Lawyers, constituting loss of Calhoun's honest services.[66]

89. Nondisclosure of material conflicts of interest and resulting loss of "Honest Services" of Defendants Calhoun, Ferguson, Known and Unknown Defendant Attorneys, and Nominating Committee Lawyers continued thereafter in furtherance of the Enterprise's goal of suppression.[67] (**Judicial immunity**, if applicable, must be pled as a defense for Ferguson and Calhoun; nevertheless their misconduct constitute "predicate acts").

a. Failure to make full disclosure of their financial interest in the Enterprise and their associated income constituted a violation of mandatory Alabama judicial financial disclosure filings. (**Nonimmune**, nonjudicial administrative

---

1997).

[66] *Supra*, ¶15

[67] Infra, ¶ 101.

acts of Ferguson and Calhoun).

90. All the injuries to Plaintiffs' money, property and business were the proximate[68] result of and related to the loss of Honest Services[69] of Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Ferguson, and Calhoun. Plaintiff class members' specific injuries in money, property and business were directly related to Defendants' general and pervasive nondisclosure of their material conflicts of interest.

91. <u>Injury - Loss of "Honest Services" of Defendant Judges and Lawyers</u>. The property taken from Plaintiffs by Calhoun, Known and Unknown Defendant Attorneys, and Nominating Committee Lawyers included Plaintiffs' rights to their Honest Services. All the injuries to Plaintiffs' property and business described herein were the proximate[70] result of and

---

[68] "Proximate cause" need only be a "substantial factor in the sequence of causation." (See *Cox*, infra p. 67, ¶ 112) It need not be the sole cause nor even the primary cause. Thus, injuries to Plaintiffs property and business can be proximately related to more than one predicate act.

[69] All injuries, whether mail or wire fraud, Hobbs Act, money laundering and monetary transactions, and/or Travel Act, are branches radiating from this initial loss of honest services. See ¶ 86, supra.

[70] "Proximate cause" need only be a "substantial factor in the sequence of causation." (See Cox, infra, p. 81, ¶112) It need not be the sole cause nor even the primary cause. Thus, injuries to Plaintiffs property and business can be proximately related to more than one predicate act.

related to the predicate acts of loss of the Honest
Services of Defendants Ferguson, Calhoun, Known and
Unknown Defendant Attorneys, and Nominating Committee
Lawyers through mail fraud and wire fraud and as a
result of said Defendants' nondisclosure of their
conflicts of interest; and such material
nondisclosure was reasonably calculated to deceive
persons of ordinary prudence and comprehension and on
which Clement, Toler, Powell, Stephens and members of
the Plaintiff class were intended to and did rely
proximately resulting in loss of property and
business.

SPECIFIC, CONCRETE PROXIMATE INJURIES TO BUSINESS
AND PROPERTY ARISING FROM PREDICATE ACTS
CONSTITUTES AN ARTICLE III "CONTROVERSY" AND A RICO
CAUSE OF ACTION.

92. As the Eleventh Circuit Court of Appeals stated in
*American United Life Insurance Co,* in the context of
a RICO action,

> "[t]o establish that a 'controversy'
> exists, a plaintiff must show that he
> suffered an 'injury in fact'—an
> invasion of a legally protected
> interest," [e.g. loss of right to
> honest services and injury to
> property].[71]

---

[71] *American United Life Insurance Co., v. Martinez*, 480 F.3d
1043; [*23] 2007 WL 677729 (11th Cir. 2007) (emphasis
added).

a.  An injury in fact is "invasion of a legally
    protected interest", e.g. fraud. An "injury
    in fact" is not a mere loss of money or
    property.[72] In the case of Mr. Toler's loss of
    Honest Services of Calhoun[73], Mr. Fernambucq,
    and Mr. Gorham, his proximate injuries in
    litigation costs and attorneys' fees were
    paid by consent of Mr. Toler under color of
    right and exceeded **$194,300**; specific,
    concrete injuries of Mr. Clement exceeded
    **$140,000**; specific concrete injuries of Mr.
    Powell exceeded **$75,000**; specific concrete
    injuries of Ms. Stephens exceeded **$250,000**;
    specific concrete injuries of the Stephens
    triplets exceeded **$75,000** each.[74] The
    foregoing specific, concrete injuries to
    business or property plus injuries of other
    class members were directly related to and
    proximately caused by Defendants' Ferguson,
    Calhoun,  Known  and  Unknown  Defendant

---

[72] Black's Law Dictionary defines an "injury" as,

   The violation of another's legal right, for
   which the law provides a remedy; a wrong or
   injustice  .  .  .  .  [A]uthorities distinguish
   *harm* from *injury*, holding that while *harm*
   denotes any personal loss or detriment, *injury*
   involves an actionable invasion of a legally
   protected interest.

[73] See *supra*, ¶ 79 et seq.
[74] See supra, ¶'s 34, 35-36, 42, 52-53.

Attorneys, and Nominating Committee Lawyers' nondisclosure of their material conflicts of interest at the outset of Toler's, Clement's, Powell's, Stephen's and other plaintiff class members' cases or at anytime while the case was pending and the Final Judgment issued.

## ALABAMA FRAUD, SUPPRESSION, AND DECEIT- §§6-5-101, 102, AND 104, CODE OF ALABAMA, 1975

93. Defendants Ferguson, Calhoun, Known and Unknown Defendant Attorneys, and Nominating Committee Lawyers, being under a fiduciary duty to disclose all facts to Plaintiff class members, failed to disclose and actively suppressed material facts pertaining to the disqualification of Calhoun and Ferguson and other material facts as specified herein constituted fraud, fraudulent suppression and deceit. (Specific injuries, see *supra,* plus punitive damages).

## THE RACKETEERING ENTERPPRISE

94. The racketeering Enterprise exists to illegally maximize the income and net worth of all the Defendants.

95. The racketeering Enterprise consists of (a) an association in fact of all the individual Defendants (including Calhoun, the Known and Unknown Defendant Attorneys, Nominating Committee Lawyers and the Unknown Coconspirators and Aiders and Abettors

treated as principals), and  who have a long and
unique association with one another, thus making the
Enterprise distinct and separate from any individual
defendant. See, *U.S. v. Perholtz,* 842 F.2d 343 (11th
Cir. 1988); (b) this association of individuals is
effected and maintained through the Club of which 10
Defendants (four dues paying Known Defendant
Attorneys and six Unknown Defendant Attorneys), 2
nondues paying circuit court judges, and 4 or 5 other
nondues paying members as Unknown Coconspirators and
Aiders and Abettors (including a welder, anesthetist,
police officer, doctor, and accountant) are members,
and which is controlled by said Defendant members,
and which has an organizational structure; and (c)
the Enterprise is also made up of the Alabama court
rooms of Defendant Judge Ferguson and Calhoun which
are controlled by and for the accomplishment of all
Defendants' goals and goals of the association in
fact and have their own organizational structure;

## ENTERPRISE'S COMMON GOALS

96. The Enterprise's policies are designed to and all
Defendants conspire to accomplish and do accomplish
the common goals set forth in ¶ 97 - 101 below.

97. The first goal of the racketeering Enterprise which
said Known and Unknown Defendant Attorneys, the
Nomination Committee Lawyers, Ferguson and Calhoun

conspired to accomplish and did succeed in accomplishing was to have Defendant Calhoun nominated to fill the 1993 judicial vacancy and thereafter to be reelected.[75]   Calhoun was nominated based on the understanding among all aforesaid Defendants that Defendant Judge Ferguson's and Calhoun's role in the Enterprise was to provide special favorable treatment to all aforesaid defendant attorneys and their clients[76], including the fraudulent award of inflated attorneys' fees in domestic relations matters.  The aforesaid defendant attorneys' role in the Enterprise was to thereafter "use and invest" illegal Enterprise income, both as campaign contributions and otherwise, to elect and maintain the lucrative status of defendant judges Ferguson and Calhoun as Jefferson County Circuit Court Judge and to otherwise share Enterprise profits with Ferguson and Calhoun.[77]

---

[75] *U.S. v. Lopez-Lukis*, 102 F.3d 1164,1169, (11th Cir, 1997). "[M]ore important[ly]. . . Defendants tried to prevent [election of] Susan Anthony, a candidate who opposed the interests of Lukis' clients. . . " In the instant case Defendants violated the public trust by trying to cause the election of Calhoun and Ferguson in furtherance of the unlawful Enterprise.

[76] *U.S. v. Castro*, 89 F.3d 1443 (11th Cir. 1996). Defendant state judges gave preferred treatment to state lawyers who received special appointments and approval of their fees-conspiracy violated §1962(d).

[77] Names of Defendant Attorneys appear on lists of contributors filed with the election commission and signed by judge Calhoun. As part of the suppression of information about the Hunting club, John Calhoun falsely claimed at a candidates' forum at the Vestavia Civic Center in October,

(**nonjudicial nonimmune** reelection predicate acts)

98. The second goal is to increase, and Defendants did increase, Known and Unknown Defendant Attorneys' and the Nomination Committee Lawyers' market share of the domestic relations law practice in the Tenth Judicial Circuit. Due to Ferguson's and Calhoun's fulfilling their Enterprise role, said defendant lawyers could produce clearly more favorable results for their respective domestic relations clients.

99. The third goal is to provide, and said Defendants did provide, further illegal valuable benefits and division of Enterprise profits to Ferguson and Calhoun, to illegally minimize taxation of Known and Unknown Defendant Attorneys along with the Nomination Committee Lawyers and Defendants Calhoun and Ferguson, and to obscure and conceal *quid pro quo* compensation to Calhoun and Ferguson through illegal money laundering and monetary transactions, in violation of §§26 U.S.C. 7201 and 7206.[78] Enterprise profits were used to provide unreported taxable

2006, that he was unaware/did not know that lawyers with many cases in his court had contributed to his campaign.

[78] Business meals and entertainment as well as charitable contributions are deductible (I.R.C. §274), but bribes and kickbacks are not (I.R.C. §§162(c)and 170). Plaintiff asserts Defendants hid some of their kickbacks as business entertainment and charitable contributions, but examination of personal and law firm tax returns is required to obtain specific proof.

benefits to Ferguson, Calhoun and the Coconspirators, Aiders and Abettors (e.g. unreported Club benefits and payments to and for Calhoun; unreported benefits and payments to Ferguson by said Defendant Attorneys.

100. The fourth goal is to, and Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Ferguson and Calhoun did devise and apply a fraudulent scheme and dishonest method of awarding excessive, inflated contingent attorney fees, including attorney contracts which did not provide a corresponding credit to the client for such payment, i.e. double-dipping.

101. The fifth goal is to conspire through the Enterprise a scheme to defraud the public and all Plaintiffs through Known and Unknown Defendant Attorneys', Nominating Committee Lawyers', along with Ferguson and Calhoun, maintaining their prohibited relationship and conflicts of interest in confidence, and all said Defendants did keep the Enterprise and their personal and financial interrelationship confidential from opposing parties, court administrators, opposing counsel, and most clients by violating their fiduciary obligations and duty to disclose.

## PATTERN OF RACKETEERING ACTIVITY

102. "Pattern" of "racketeering activity."[79] More than two distinct Predicate Acts[80] have been pled, though only two such acts need be pled.[81] All such related acts occurred after the effective date of the RICO Act (i.e. after October 15, 1970).

103. The Predicate Acts are **related** in that they all further the common goals of the Enterprise[82]; have common participants,[83] common methods of commission,[84] common injuries,[85] and numerous, common class of victims.[86]

104. The Predicate Acts reflect **continuity** since they

---

[79] Pattern. 18 U.S.C. 1961(5) " 'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;"(emphasis added).

[80] "Predicate Acts". To constitute a "predicate act", there merely needs to be properly pled violations of the criminal statutes listed in §1961.

[81] See *Infra* for Predicate Acts violating Hobbs Act, Travel Act, Money Laundering, Monetary Transactions, and Mail and Wire Fraud.

[82] *Supra*, ¶'s 97 - 101.

[83] In each instance, participants were Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, Ferguson, Calhoun, and the Coconspirators, Aiders, and Abettors.

[84] *Supra*, ¶'s 14 - 93.

[85] See supra, ¶'s 34, 35-36, 42, 52-53.

[86] Litigants in domestic relations proceedings before Ferguson or Calhoun represented by and/or opposed by Defendant Attorneys– see Class Definition. Infra, ¶'s 113-124.

began in 1993,[87] have continued uninterrupted since that date, continuing by Calhoun in a modified mediation/arbitration format and by money laundering to divert income to Calhoun (**nonimmune** predicate acts by Calhoun) after December 31, 2006, when Calhoun was removed from office, and will continue into the future if not deterred by this civil action.

105. The latest of the racketeering acts was within ten years of a prior act.

106. The predicate acts are distinct in that the Enterprise is a wholly distinct and separate entity from its individual members and Predicate Acts are based on violations of multiple §1961 prohibited activities, e.g. Hobbs Act,[88] Travel Act,[89] money laundering and monetary transactions violations,[90] and mail/wire fraud;[91] predicate acts have been targeted at and injured many different persons;[92] over many years (1993-present).[93]

---

[87] See ¶ 14, et seq, i.e. (§1962 (b)) Through control, conversion of the preexisting legitimate hunting club into a racketeering enterprise; Hobbs Act; Travel Act, Money Laundering, Monetary Transactions, and Mail and wire fraud.
[88] *Supra*, ¶ 59**Error! Reference source not found.**
[89] *Supra*, ¶ 67.
[90] *Supra*, ¶ 72.
[91] *Supra*, ¶ 74.
[92] See infra, ¶ 113.
[93] Began in 1993, Toler in 1994-1996, 2004 and Mr. Clements, 2006-present.

<u>VIOLATIONS OF</u>
<u>18 U.S.C. § 1962(a), (b), (c) and (d):</u>
<u>THROUGH A PATTERN OF RACKETEERING ACTIVITY</u>

107. The Known and Unknown Defendant Attorneys and Nominating Committee lawyers along with Calhoun violated and in the future will continue to violate 18 U.S.C. 1962(a) by receiving income[94] derived, directly or indirectly, from a "pattern" of "racketeering activity"[95], and or collection of usurious[96] interest on unlawful debt for attorneys' fees in which such Defendants have participated as principals and by "using and investing," directly or indirectly, part of such income, and the proceeds of such income, in "acquisition of interests in and the establishment and operation of" the Enterprise[97] which is engaged in and the activities of which affect interstate commerce;

   a.  Said Defendants did use and invest illegal income from the Enterprise –

---

[94] (See supra, ¶'s 34, 35-36, 42, 52-53..
[95] See discussion supra.
[96] Interest on the enforceable debt, not the unenforceable, artificially inflated debt, is for the "use or forbearance" of money. To first inflate a debt by amounts of unenforceable, champertous legal fees evades Alabama's usury laws. See AL Code, 1975, §8-8-12, *Willis v. Buchman*, 30 Ala.App. 33, 199 So. 886 (Ala.App. 1940).
[97] See, e.g. ¶'s 113.

i.    as   campaign   contributions[98]   in   order   to
      establish   and   maintain   the   lucrative
      judgeships of Calhoun and Ferguson which were
      essential   to   accomplishment   of   their
      racketeering activities ("Predicate Acts");

ii.   as   improvements   to   Club   amenities[99]   and
      establish   operating   procedures   which   were
      utilized   by   Defendants   in   order   to   share
      unreported income from the Predicate Acts.

iii.  Reinvestments   were   made   to   allow   the
      Enterprise   to   continue   its   injurious
      activities each year.[100]

iv.   to establish physical facilities and provide
      maintenance and operating costs to make the
      Club's   physical   facilities   available   as   a
      remote   and   isolated   place   to   hold   meetings
      for   direct   conduct   of   the   Enterprise's
      predicate acts – the facilities were remote;
      gave   Defendant's   a   cover   for   their
      racketeering activities away from the eyes of
      the   public;   but   also   provided   them   with
      social   interaction,   binding   them   tightly

[98] See ¶'s 27-28.
[99] *Supra*, ¶ 14-29·
[100] In *In re Shalen & Associates, Inc. Securities Litigation*,
773 F. Supp 342 (S.D.FL, 1991) reinvestment to enable the
enterprise to continue its harm was found sufficient nexus
between income and a Plaintiff's harm.

together personally, the benefits of which accrued to the smooth operations of the Enterprise over time – As Defendant Gorham told a client in 2006, **"Calhoun and I are in the same hunting club together.** We hunt together all the time . . . [we] sit around down there **drinking a lot of whiskey together** . . . the judge and I are **real G_ _ D_ _ _ tight**![101]"

b. The foregoing "use and investment" of income derived from the Predicate Acts violated §1962 (a) and as a proximate result[102] of such violation and the predicate acts, Plaintiff class members were injured in their business and/or property by reason of such violation of § 1962 (a) by:

   i. enabling the Enterprise to have been established,

---

[101] Gorham made this statement to Gorham client Mr. Clements in 2006, after Judge Calhoun stated on 6/16/2003 he had "quit" being a member of the club many years ago-it appears Calhoun didn't quit being a member, he just quit paying dues.

[102] These positions are presented in the "alternative". The rule in the Eleventh Circuit is not that injuries must have been proximately caused by violations of §1962(a), (b), (c), and (d). Such a special "RICO injury" was clearly and specifically dismissed by the Supreme Court in Sedima v. Imrex Co., 473 U.S. 479, 482, 105 S.Ct. 3275, 3277-78, 87 L.Ed.2d 346 (1985). Since Sedima, the Eleventh Circuit has followed the Supreme Court's holding. (See e.g. Pelletier, Private litigants can recover under 18 U.S.C. 1964(c) but their injury must "flow from the commission of the predicate acts." Sedima, at 497.

> > ii.   providing   essential   physical   facilities, including   both   the   Club   and   the   judges' courtrooms,   for   necessary   conduct   of   the Enterprise,

> > iii.   establishing the initial basis for all future Predicate Acts and maintaining the Enterprise which proximately injured the Plaintiff class in their property and business interests, and

> c.   "in   acquisition   of   interests   in   and   the establishment and operation of the Enterprise." Investments   in   the   Club   as   described   in   ¶29, *supra*,   represented   acquisition   of   interests   in and/or   establishment   of   the   Club   and/or   the judges'   courtrooms   as   the   Enterprise.   Campaign contributions   reflect   both   establishment   and operation   of   the   Club   as   Enterprise   as   well   as investment   in   and   establishment   of   the   Alabama courtrooms   of   these   judges   as   the   alternative Enterprise.

108. The   Known   and   Unknown   Defendant   Attorneys,   the Nominating   Committee   lawyers   along   with   Calhoun   and Ferguson   to   violate   18   U.S.C.   1962(b)   by,   through   a "pattern   of   racketeering   activity"[103]   or   collection

---

[103] See, ¶102 et seq.

of usurious interest on an unlawful debt for attorneys' fees,[104] "acquiring and maintaining,"[105] directly or indirectly, an "interest in or control of" the Enterprise[106] which is engaged in, and the activities of which affect interstate commerce;

a. [A]cquiring and maintaining, directly or indirectly, an *interest in*[107] the Enterprise.

   i. Said Defendants have proprietary interests and property rights, including the 2,700 acre leasehold, in the Enterprise as the result of their use and investment of income from the Predicate Acts to acquire and maintain such interests.

   ii. Said Defendants share the right to enjoyment of Enterprise property and its illegal

---

[104] Interest on the enforceable debt, not the unenforceable, artificially inflated debt, is for the Ause or forbearance@ of money. To first inflate a debt by unenforceable amounts evades Alabama=s usury laws. See AL Code, 1975, '8-8-12, *Willis v. Buchman*, 30 Ala.App. 33, 199 So. 886 (Ala.App. 1940).

[105] Unlike §1962(a), there is no requirement that the maintenance or acquisition of an interest come from the use or investment of illegal income from the Enterprise.

[106] see, e.g. ¶'s 14-29.

[107] "Interest in" requires more than a general interest in the results of the Enterprise's actions. "[I]nterest" in fact encompasses all property rights in an enterprise for purposes of § 1962(b). See United States v. Martino, 681 F.2d 952, 954 (5th Cir.1982)(en banc) participation in the advantage, profit and responsibility of the enterprise is an "interest". See *Moffatt Enters., Inc. v. Borden Inc.*, 763 F.Supp. 143, 147 (W.D.Pa.1990).

income, and such income rights held by said
Defendants constitute an interest in the
Enterprise.[108]

b.  **or,** control[109] of the Enterprise –

    i.  See ¶'s 14, 29, and 95. The Club membership
consisted of 16 or 17 members, all of whom
are Defendants in this case; ten of such
members are domestic relations or criminal
lawyers who alone paid all costs of the
hunting club's operations (four Known
Defendant Attorneys, six Unknown Criminal
Defendant Attorneys), two judges (Calhoun and
a Circuit judge, criminal division) who, of
course, controlled their courtrooms, and four
or five Unknown Coconspirators and Aiders and
Abettors who shared in Club benefits as an
interest in the Enterprise and who joined
with other Defendants in controlling the
Enterprise.

c.  Said Defendants' having an interest in and/or

---

[108] See e.g., ¶'s 97 - 101 supra.
[109] "Control" includes some ownership of the Enterprise
(Enterprise is, alternatively, (1) association of
individuals; (2) hunting club; and/or (3) judges' courts)
or an ability to exercise dominion over it, but need not be
formal control and "need not be the kind of control that is
obtained, for example, by acquiring a majority of the stock
of a corporation. ") (quoting *Sutliff, Inc. v. Donovan Co.*,
727 F.2d 648, 653 (7th Cir.1984)).

control over the Enterprise in its various alternative forms enabled Defendants Ferguson, Calhoun, Known and Unknown Defendant Attorneys, and Nominating Committee Lawyers to effectively accomplish their joint goals.[110] Said Defendants' interest in and control of the Enterprise allowed the Enterprise to operate without discovery through the cover of the Club and the judges' courtrooms, was essential in effective operation of the Enterprise, and was a necessary tool for accomplishment of its predicate acts and the proximate injury to the property and business of Plaintiff class members.

d. Acquiring and maintaining control over and a proprietary interest in the income and property of the Enterprise, including particularly the judges' courtrooms, in violation of §1962(b), proximately resulted in direct injury to property and business interests of parties in domestic relations proceedings before Calhoun.

109. The Known and Unknown Defendant Attorneys, Nominating Committee lawyers, Ferguson and Calhoun violated and continue to violate 18 U.S.C. 1962(c) by, "being employed by and/or associated with" the

---

[110] *Supra*, Enterprise Common Goals.

Enterprise[111]  which is engaged in, and the activities
of which affect, interstate commerce, said Defendants
did "conduct or participate, directly or indirectly,
in the conduct of" such Enterprise's affairs through
a pattern of racketeering activity[112] or collection of
usurious interest on unlawful debt for attorneys'
fees;[113]

a.  Said Defendants were *employed by and/or
    associated with the Enterprise*. – Employed by
    and/or associated with are less stringent
    requirements than "control." Since said
    Defendants did form, conspire with, own an
    "interest in" and "control" the Enterprise,
    receive and divide the profits of the Enterprise,
    they are clearly "associated with" the
    "Enterprise" as a separate and distinct entity in
    all of its alternative forms. Said Defendants'
    being associated with the Enterprise allowed them
    to accomplish Predicate Acts through the
    Enterprise and proximately caused injury to the
    property and business of Plaintiff class members.

b.  Said [D]efendants did *conduct or participate,
    directly or indirectly, in the conduct of such*

---

[111] See, e.g. ¶'s 14-29.
[112] See, e.g. ¶ 102.
[113] *Supra*, Note 88.

*Enterprise's affairs.*[114]

    i.    "[C]onduct of an enterprise". The Enterprise must engage in a "course of conduct," i.e. have a common purpose for accomplishment of common goals.[115]

    ii.    "Conduct." Defendants "must participate in the operation or management of the enterprise itself."[116] Ferguson, Calhoun, Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, and Unknown Coconspirators and Aiders and Abettors directly participated in conspiring to and accomplishing the Enterprise's common goals of collecting illegal income through fraud, knowing failure and refusal to provide honest services, money laundering, monetary transactions, Travel Act, Hobbs Act, and mail/wire fraud violations thereby violating §1962(c), and

    iii.    The Enterprise must be and is separate and distinct from its individual members.[117]

---

[114] See ¶'s 14 - 18, 29-58.
[115] *Supra* ¶'s 97 - 101 for common goals of the Enterprise. See *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1283-1284, (C.A. 11, 2006)).
[116] *Reeves v. Ernst & Young*, 507 U.S. 170, 185, 113 S.Ct. 1163, 1173, 122 L.Ed.2d 525 (1993).
[117] See *supra*, ¶ 95.

c. As the proximate result of such violations, Plaintiff class members were proximately injured in their property and business. See supra, ¶'s 34-36, 42, and 53-54.

110. Known and Unknown Defendant Attorneys and Nominating Committee Lawyers in conspiracy with Calhoun and Ferguson and the Unknown Coconspirators and Aiders and Abettors violated and continue to violate 18 U.S.C. 1962(d) by conspiring through regular meetings and communications at the Club and in the Courts conspired to violate the provisions of 18 U.S.C. 1962, subsections (a), (b), and/or (c) through regular meetings and communications at the Club and in the Courts.

a. Such conspiratorial planning occurred through *ex parte* discussions through the association of individuals as well as at the Club and the controlled courtrooms and judges' chambers of the Enterprise.

   i. These conspiracies included initially conspiring to attempt to reach the five common goals of the Enterprise,[118] and

   ii. thereafter conspiring to accomplish all such joint goals in individual cases before

---

[118] Infra, ¶'s 97 - 101.

Defendants Calhoun and Ferguson as Predicate Acts, *e.g.* see *supra* discussion of ex parte conspiratorial communications.[119]

iii.   As the proximate result of such conspiratorial planning, Defendants did also directly violate §1962 (a), (b), and (c) proximately resulting in direct injury to property and business interests of the Plaintiff class members as reflected supra.

iv.   All coconspirators did intend to and did take numerous actions in furtherance of their conspiracy.

<u>STANDING AND PROXIMATE CAUSE</u>

111. Plaintiff class has standing to sue all Known and Unknown Defendant Attorneys, the Nominating Committee Lawyers, Calhoun, Ferguson, and the Unknown Coconspirators and Aiders and Abettors for treble damages under §1964(c) for injuries to their business and/or property "by reason of" said Defendants' violations of § 1962. Such proximate injuries were suffered by reason of Defendants' racketeering activities, i.e. the Predicate Acts.

---

[119] See Castro, (11th Cir.), *supra*, Note 76 -conspiracy to commit an overall objective or to commit at least two Predicate Acts is sufficient to violate §1962(d).

112. To have standing, Plaintiff must be a person (1) *injured* in his *business or property*, (2) by *reason of* (3) a *violation of §1962, i.e. by a Predicate Act*.

Injured in his *business or property* . . . a *violation of §1962*. (See supra, ¶'s 34, 35-36, 42, 52-53.)

   a.  "By *reason of*" –

      i.  "And the Supreme Court has already told us that 'by reason of' incorporates a **proximate cause** standard, *see Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 265-68, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)".[120]

      ii.  A wrongful act is "a **proximate** cause if it is a **substantial factor** in the sequence of responsible causation." *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1399 (11th Cir.1994) (emphasis added). Need *not be sole nor* even *primary cause* – Defendants *not absolved* merely because there are *other contributing factors at work.*

PLAINTIFF CLASS ACTION ALLEGATIONS

113. This action has been brought and may be properly maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil

---

[120] See Cox, *infra*, subparagraph ii.

Procedure because:

114. The questions and issues of law and fact raised in this action are of a common or general interest, affecting many persons, including existence of the Enterprise, Defendants Calhoun and Ferguson's disqualification, charging clients and opposing parties for valid divorce decrees but providing them with divorce decrees of questionable validity, fraudulent nature of attorney's fees awarded Known and Unknown Defendant Attorneys and Nomination Committee Lawyers, violations of Hobbs Act, Travel Act, money laundering, monetary transactions violations, mail and wire fraud, and fraudulent suppression.

115. The plaintiff class, as hereinafter described and defined, may consist of as many as 2,000 or more members, and is so numerous that it is impractical to bring all members of the class before the court;

116. The questions of law or fact common to the class are substantially similar and predominate over the single question of certain types[121] of individual

---

[121] Primary damages constitute legal fees wrongly extorted for "honest services" and valid orders and judgments which plaintiffs did not receive. Injury can be easily calculated by merely adding total legal fees. Injuries as a result of fraudulent property settlements, alimony, etc. are the only type of injury requiring individual proof and does not prevent class action certification in the Eleventh Circuit.

damages;

    a.  Existence and control of the "Enterprise" and its impact on interstate commerce.

    b.  The "Pattern" of predicate acts necessary to establish liability under RICO.

    c.  Proof of Defendants' "predicate acts" is the same for all class members.

    d.  *Edwards*-type mail fraud, i.e. "Scheme to defraud" - Deceit, "pay for one thing but receive another."

    e.  Hobbs Act violations.

    f.  "Honest services" mail fraud.

    g.  Issues of Money Laundering, Monetary Transactions and Travel Act violations are common issues for all Plaintiff class members.

    h.  "Duty" to disclose and scheme to defraud are the same for all class members.

    i.  Reliance.

    j.  Violations of 18 U.S.C. § 1962(a), (b), (c) and d.

    k.  Standing-Injury to "property or business."

    l.  Rule 23(b)(3) Factors.

---

See *Klay v. Humana, Inc.,* 382 F.3d 1241, 1259 (11th Cir., 2004). (Emphasis added). ("[N]umerous courts have recognized that the presence of ***individualized damage issues does not prevent a finding that the common issues in the case predominate.***" (Citations omitted))

117. There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations, unfair business practices, negligence, fraud, and other improprieties, and in obtaining adequate compensation for the damages and injuries which defendants' actions have inflicted on the class. Indeed, there is a community of interest as to whether the combined assets and available insurance of defendants is sufficient to adequately compensate the members of the class for the injuries sustained;

118. The Representative Plaintiffs are members of the class hereinafter described and defined, their claims are typical of the claims of the class, and each Representative Plaintiffs' damages greatly exceed $75,000;[122]

119. Representative Plaintiffs will fairly and adequately protect the interests of the class and have no interests that conflict with the class.

120. Without class certification, the prosecution of separate actions by individual members of the plaintiff class would create a risk of:

    a. Inconsistent or varying adjudications with

---

[122] See¶'s 34, 35-36, 42, 52-53.

respect to individual members of the class which would establish incompatible standards of conduct for defendants; or

b. Adjudications with respect to the individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests, including, but not limited to, the potential for exhausting the funds available from those parties who are or may be responsible defendants;

121. Defendants Ferguson, Calhoun, Known and Unknown Defendant Attorneys, Nominating Committee Lawyers, and Coconspirator Aiders and Abettors have acted or refused to act on grounds generally applicable to the class regarding fraud, suppression, refusal of said Defendants to disclose facts of their conflicts of interest thereby making final injunctive relief appropriate with respect to the class as a whole; and

122. A class action brought by Representative Plaintiffs is superior to other available methods for the fair and efficient adjudication of the claims presented by this Complaint, and will prevent the undue financial, administrative, and procedural burdens on the parties and on the court which

duplicative individual litigation would impose.

123. The plaintiff class consists of and is defined as:

> Persons who, directly or indirectly, were
> (a) persons connected to or parties to or
> associated with   any   domestic   and/or
> divorce   matters,   interests,   issues,
> proceedings and/or actions, whether or not
> filed or litigated, and were represented
> by or opposed by, directly or indirectly,
> any such Defendant Attorneys (Wright,
> Gorham, Fernambucq, and Vincent and their
> respective law firms, Najjar, Denaburg, et
> al, P.C., Gorham and Cason, LLC, and Boyd,
> Fernambucq and Vincent, P.C. and their
> unknown partners and associates along with
> the unknown Nomination Committee Lawyers,
> Unknown Defendant Attorneys, and their
> respective unknown law firms, partners and
> associates) and who otherwise appeared
> before or otherwise dealt, directly or
> indirectly, with Fernambucq or Calhoun,
> including the children of such persons
> whose custody and welfare were, directly
> or indirectly, an issue in such family
> and/or divorce matters, interests, issues,
> proceedings and/or actions.

124. At all material times, the Representative Plaintiffs are within the class of persons described in Paragraph 122 above having been a party to actions appearing before Ferguson or Calhoun and opposed by and/or represented by said defendant attorneys.

Wherefore Representative Plaintiffs and Plaintiff class members were injured in person, business interests, and property by the foregoing actions and demand the following relief:

a. Judgment against Defendants to the full extent of such damages, being not less than $30,000,000 in consequential damages plus punitive damages [Alabama fraud injuries] and costs including reasonable attorneys' fees, plus other damages to which the Plaintiff may be entitled, including treble damages under 18 U.S.C. §1964.

b. Class members and each of them is entitled to be reimbursed their costs and attorneys' fees associated with this action.

c. Class members are entitled to equitable relief in the form necessary to prevent future denial of justice and the appearance of justice to the residents of Jefferson County, Alabama, in domestic relations matters as provided in 18 U.S.C. §1964 and under applicable Alabama law.

Respectfully submitted,

/s/ _____

Joseph W. Blackburn,
Attorney for Representative Plaintiffs and
        Plaintiff Class
4037 Butler Springs Place
Birmingham, Al 35226
Tel. 205-835-5847


### DEMAND FOR JURY TRAIL

Please take notice that Representative Plaintiffs and Plaintiff class demand trial by struck jury of all of the issues in this case.

/s/ _____
Counsel to the Plaintiff class:
Joseph W. Blackburn
4037 Butler Springs Place
Birmingham, Al 35226
Tel. 205-835-5847


### CERTIFICATE OF SERVICE

I, Joseph W. Blackburn, hereby certify that on _____, I filed this COMPLAINT, with the Clerk for the Federal District Court for the Northern District of Alabama in compliance with its procedures for physical and electronic filing with the following persons.

Recipients:
Mr. John C. Calhoun
c/o Bettie J. Carmack
Office of the Attorney General
Alabama State House
11 South Union St.
Montgomery, AL 36160-0152

Judge R.A.Ferguson
c/o Bettie J. Carmack

Office of the Attorney General
Alabama State House
11 South Union St.
Montgomery, AL 36160-0152

Mr. George Richard Fernambucq
Boyd, Fernambucq & Vincent, P.C.
2801 University Blvd., Ste. 302
Birmingham , AL 35233-0000
(205) 930-9000

Mr. Richard Vincent
Boyd, Fernambucq & Vincent, P.C.
2801 University Blvd., Ste. 302
Birmingham , AL 35233-0000
(205) 930-9000

Boyd, Fernambucq, Vincent & Dunn, P.C.
J. Ronald Boyd, Agent
And its partners, members and shareholders
2801 University Blvd., Ste. 302
Birmingham , AL 35233-0000
(205) 930-9000

Mr. Charles William Gorham
Gorham & Cason, L.L.C.
505 20th St N Ste 1650
Birmingham, AL 35203-4630
(205) 251-9166
205) 581-5038

Gorham & Cason, L.L.C.
Charles Gorham, Agent
And its partners, members and shareholders
505 20th St N Ste 1650
Birmingham, AL 35203-4630
205) 581-5038
(205) 251-9166

L. Steven Wright
Najjar, Denaburg, P.C.
2125 Morris Ave
Birmingham, AL 35203-4209
(205) 250-8400

Najjar, Denaburg, P.C.
Robert H. Adams, Agent
And its partners, members and shareholders
2125 Morris Ave
Birmingham, AL 35203-4209
(205) 250-8400